## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TELA MARIE SABOL,

    *Plaintiff,*

vs.

CITY OF DETROIT, DETROIT
DEPARTMENT OF PUPLIC WORKS
(DPW), MARK JACKSON, in his official
and individual capacities, ZACHARY
PARIS, in his official and individual
capacities, CRYSTAL CURRY, in her
official and individual capacities, CLAUDE
LYONS, in his official and individual
capacities, BOBBY LIGON, in his official
and individual capacities, VALERIE JONES-
PALM, in her official and individual
capacities, DEDRIN WALKER, in his official
and individual capacities, ZENA RIDLEY, in
her official and individual capacities, TORON
MURPHY, in his official and individual
capacities, INGR WILSON, in her official
and individual capacities, DOUG COLLINS,
in his official and individual capacities, and
DHAVAL PATEL, in his official and
individual capacities, BURLEY BOZEMAN
in his official and individual capacities, and
NICHOLAS LOONEY, in his official and
individual capacities,

    *Defendants.*

Case No. 25-13405

Hon. Denise Page Hood



**DODSON
FOWLER
WILLIAMS
& NESI, PLC**

*Main Office*

18050 Mack Ave.
Grosse Pointe Farms,
MI, 48236

(313) 458-8276
(313) 469-7085 (Fax)

*Village Office*

722 Notre Dame
Grosse Pointe, MI
48230

(313) 886-5769
(313) 886-5851 (Fax)

ffwplc.com

*Attorneys*

Nathan A. Dodson, Esq.
Aimee M. Fowler, Esq.
Daniel J. Williams, Esq.
Christopher J. Nesi, Esq.
Michael Wightman, Esq.

DFWN, PLC
Aimee M. Fowler, P72736
Daniel J. Williams, P72085
Attorneys for Plaintiff
18050 Mack Ave.
Grosse Pointe, MI 48230

(313) 458-8276 / (313) 469-7085 (FAX)
aimeenfw@gmail.com
danielnfw@gmail.com

## REDACTED COMPLAINT

Now comes Plaintiff, TELA MARIE SABOL, by and through her attorneys, DFWN, PLC, and

Aimee M. Fowler, Esq. files this Complaint and Jury Demand, and alleges as follows:

## PARTIES

1. Plaintiff, TELA MARIE SABOL, is a resident of Wayne County, which is located within this Judicial District.

2. Defendant, CITY OF DETROIT, is a governmental entity that does business within the County of Wayne, which is located within this Judicial District.

3. Defendant DETROIT DEPARTMENT OF PUPLIC WORKS (DPW) is a City of Detroit operated governmental entity that is located and conducts business operations within the County of Wayne, which is located within this Judicial District.

4. Defendant MARK JACKSON is a resident of Michigan. He is being sued within his official and individual capacities.

5. Defendant ZACHARY PARIS is a resident of Michigan. He is being sued within his official and individual capacities.

6. Defendant CRYSTAL CURRY is a resident of Michigan. She is being sued within her official and individual capacities.

7. Defendant CLAUDE LYONS is a resident of Michigan. He is being sued within his official and individual capacities.

8. Defendant BOBBY LIGON is a resident of Michigan. He is being sued within his official and individual capacities.

2

9. Defendant VALERIE JONES-PALM is a resident of Michigan. She is being sued within her official and individual capacities.

10. Defendant DEDRIN WALKER is a resident of Michigan. He is being sued within his official and individual capacities.

11. Defendant ZENA RIDLEY is a resident of Michigan. She is being sued within her official and individual capacities.

12. Defendant TORON MURPHY is a resident of Michigan. He is being sued within his official and individual capacities.

13. Defendant INGR WILSON is a resident of Michigan. She is being sued within her official and individual capacities.

14. Defendant DOUG COLLINS is a resident of Michigan. He is being sued within his official and individual capacities.

15. Defendant DHAVAL PATEL is a resident of Michigan. He is being sued within his official and individual capacities.

16. Defendant BURLEY BOZEMAN is a resident of Michigan. He is being sued within his official and individual capacities.

17. Defendant NICHOLAS LOONEY is a resident of Michigan. He is being sued within his official and individual capacities.

18. At all relevant times Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW), was operating under the color of law at the time these constitutional violations occurred, described herein and is not entitled to any type of immunity.

19. At all relevant times Defendant, MARK JACKSON, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

3

20. At all relevant times Defendant, ZACHARY PARIS, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

21. At all relevant times Defendant, CRYSTAL CURRY, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

22. At all relevant times Defendant, CLAUDE LYONS, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

23. Defendant, BOBBY LIGON, from the information available to Plaintiff at this time, at all relevant times was employed by Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW) as a union representative on behalf of Teamsters, Local #241.

24. At all relevant times Defendant, VALERIE JONES-PALM, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

25. At all relevant times Defendant, DEDRIN WALKER, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

26. At all relevant times Defendant, ZENA RIDLEY, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

27. At all relevant times Defendant, TORON MURPHY, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

28. At all relevant times Defendant, INGR WILSON, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

29. At all relevant times Defendant, DOUG COLLINS, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

30. At all relevant times Defendant, DHAVAL PATEL, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

31. At all relevant times Defendant, BURLEY BOZEMAN, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

32. At all relevant times Defendant, NICHOLAS LOONEY, was an acting employee/agent of Defendant, DETROIT DEPARTMENT OF PUPLIC WORKS (DPW).

33. At all relevant times, all individually named Defendants were operating under color of law at the time of the constitutional violations described herein and are not entitled to qualified or any other immunity.

34. At all times, all individually named Defendants were acting as agents and/or employees of Defendant City of Detroit and/or Detroit Department of Public Works and/or with authority granted each individual by the City.

**<u>VENUE AND JURIDICTION</u>**

35. Venue is proper pursuant to *28 U.S.C. § 1391 (a) - 28 U.S.C. § 1391 (b)* because a substantial part of the acts giving rise to this lawsuit occurred in this Judicial District and Defendants conduct business and/or employed Plaintiff within this Judicial District.

36. This court has subject matter jurisdiction over this controversy because Plaintiff raises federal questions under *28 U.S.C § 1331* pursuant to *42 U.S.C § 1983* and Title VII of the Civil Rights Act of 1964, being *42 U.S.C. §2000a, et seq.,* including but not necessarily limited to *42 U.S.C. §2000e – 2(a)(1).*

**<u>FACTUAL ALLEGATIONS</u>**

37. Plaintiff, JANE DOE, is an African American woman of color, and therefore a protected class under Title VII of the Civil Rights Act of 1964.

38. Plaintiff was offered employment at Defendants, CITY OF DETROIT, more specifically, Detroit's DEPARTMENT OF PUBLIC WORKS (DPW), on November 26, 2024.

5

39. Plaintiff would later accept this offer and officially become an employee of Defendants, CITY OF DETROIT in DETROIT DEPARTMENT OF PUBLIC WORKS (DPW), on January 27, 2025.

40. During all periods of employment, Plaintiff satisfied the terms of her employment agreement and performed all duties to the best of her abilities.

41. On January 27, 2025, the same day Plaintiff was officially hired, she was introduced to Defendant Mark Jackson (M.J.), who commented on Plaintiff's physical characteristics and told her how beautiful she looked.

42. On January 28, 2025, Plaintiff communicated via text to dispatch coordinator, Defendant Ingra Wilson (I.W.), that she was unable to work that day due to lack of supervision for her 6-year-old. This message was also sent to Defendant M.J., who approved Plaintiff's day off. (**Exhibit 1 – Message to Dispatch**).

43. The next day, January 29, 2025, Plaintiff began receiving text messages from Defendant M.J. specifically relating to her. Thinking this was routine conduct, Plaintiff did not think anything of it. (**Exhibit 2 – 1st Inappropriate Text from Def. Jackson to Plaintiff**).

44. Defendant, M.J.'s actions took a rather inappropriate turn on January 31, 2025, when he invited Plaintiff to Starters Bar & Grill, in the city of Detroit, to talk with her.

45. At this meeting, Defendant M.J. told Plaintiff he was in love with Plaintiff and it was "love at first sight."

46. Plaintiff promptly responded negatively to the comment, as M.J. was married and Plaintiff did not want to have a relationship with a co-worker.

47. Defendant M.J. then threatened Plaintiff's new position and her professional reputation if Plaintiff did not engage in a relationship with M.J. Defendant M.J. followed the threat with

a comment telling Plaintiff that if she told anyone about the threat, no one would believe her because of his long-standing, 25-year, tenure with the Defendants, City of Detroit and more specifically, Detroit Public Works.

48. Defendant M.J., when concluding the meeting at Starters Bar & Grill, declared that he would be following Plaintiff to her home.

49. After the Starters Bar & Grill meeting involving M.J. threatening Plaintiff's career and job prospects with Defendants City of Detroit and Detroit Public Works and following Plaintiff to her residence, M.J. and Plaintiff had sexual intercourse.

50. On February 9, 2025, Plaintiff was given one hundred dollars and packs of cigarettes from Defendant M.J., with no stated reason for the gesture.

51. On February 25, 2025, at 3:09 p.m., Plaintiff received a completely unwanted picture from Defendant, Zachary Paris (Z.P.). The picture was of his personal male genitals. (**Exhibit 3 – Photograph**).

52. On February 26, 2025, Defendant M.J. dropped off a DoorDash delivery to Plaintiff's home for her son during work hours as a supervisor employed by the City of Detroit, specifically Detroit Public Works.

53. On the same day, Plaintiff received information that Defendant, Burley Bozeman (B.B.), has been showing co-workers her personal Facebook Profile and describing her as having a "banging ass body."

54. On March 3, 2025, Defendant M.J. arrived at Plaintiff's residence unsolicited, Plaintiff ignored his constant attempts of contact which caused him to leave shortly after.

55. Plaintiff turned in resignation slips on and around March 13, 2025. To Plaintiff's disbelief, those resignation slips were never processed and subsequently disposed of. Plaintiff

believes the resignation notices were ripped up by Union Representatives of Defendant City of Detroit, more specifically, by Defendant Detroit Public Works employees.

56. On March 30, 2025, Defendant M.J. pulled Plaintiff from her workday to deposit and open a checking account at a local credit union. Plaintiff told Defendant M.J. that she would do it after work, but Defendant M.J. demanded he be aware of everything happening in her life.

57. During Plaintiff's and Defendant M.J.'s transit to the credit union, on March 30, 2025, Defendant M.J. made a stop and told Plaintiff he wanted to have sex with Plaintiff. Plaintiff, fearing for her job once again, subsequently agreed.

58. Once again on March 31, 2025, Plaintiff needed to go to the bank. Defendant M.J. then left work and indicated he did not want Plaintiff going by herself.

59. Throughout the month of March 2025, Plaintiff filed two sexual harassment claims against M.J. and no action was ever taken was ever taken by City of Detroit Human Resource Representative Defendant Zena Ridley (Z.R.).

60. At 4:15 am on April 8, Plaintiff texted dispatch that she would be unable to make it to work that day. Although Plaintiff texted dispatch, Defendant Crystal Curry (C.M). texted Plaintiff and told her she would be marked "awol" for the day. Defendant C.M. indicated the reason for the "awol" notation was that employees cannot miss more than three days of work in a row, even though Plaintiff possessed and could provide a doctor's note, explaining the absences.

61. On April 15, 2025, Plaintiff called Defendant Union Representative, Bobby Ligon (B.L.). Plaintiff requested blank sexual harassment forms be provided to her from Defendant B.L. due to egregious comments made by Defendant Claude Lyons (C.L), a coworker at

Defendant City of Detroit and Defendant Detroit Public Works. Defendant C.L. asked Plaintiff to put on an exotic dancer's dress and perform a routine for him.

62. Defendant B.L. never provided the sexual harassment forms to Plaintiff and never provided any instruction or direction to Plaintiff as to how Plaintiff might protect herself from all the unwanted advances and contacts.

63. On April 16, 2025, a situation akin to the events on March 30, 2025, occurred. Plaintiff needed to go to the bank, Defendant M.J. demanded to come along, and as before, Defendant M.J. requested sex on company time with Plaintiff.

64. On April 22, 2025, Plaintiff found out she was pregnant with Defendant M.J.'s child, as he was the only sexual partner Plaintiff had at the time. Plaintiff officially ended things with Defendant M.J. on this day, as his predatory behavior resulted in an unwanted pregnancy, despite Defendant M.J.'s representations that he had a vasectomy.

65. After the Plaintiff ceased communication with Defendant M.J., Plaintiff contacted Defendant M. J.'s wife, Simone Jackson. Simone Jackson called Plaintiff after a text conversation and Plaintiff informed Simone Jackson that Defendant M.J. and Plaintiff were no longer seeing each other. (**Exhibit 4 – Communication between Plaintiff and Simone Jackson**).

66. At the height of this relationship, Defendant M.J. would come to Plaintiff's house every day on Defendant City of Detroit and Defendant Detroit Public Work's work hours asking for sexual favors. Plaintiff emphasizes that on one occurrence, Defendant M.J. came to her home ten times during the workday for sexual intercourse, using a department issued truck.

67. On April 24, 2025, Defendant M.J. filed a harassment claim against Plaintiff with Defendant City of Detroit and Defendant City of Detroit Human Resources representative

Zena Ridley (Z.R.). Defendant M.J.'s claims were immediately responded too, and Plaintiff was subsequently removed from her truck by Defendant Valerie Jones-Palm (V.P.-J.), a supervisory employ of Defendant City of Detroit and Defendant Detroit Public Works and pulled into a meeting with Defendant Z.R.

68. This meeting consisted of Defendant City of Detroit Human Resources representative, Defendant Z.R., and supervisory personnel including Defendants Valerie Jones-Palm, Defendant Mark Jackson, Defendant Dedrin Walker (D.W.), and Defendant Nick Looney (N.L.).

69. In this meeting, Defendant Z.R. tells Plaintiff that she is forbidden from having any male contact or reporting to any males/male supervisors at Defendant City of Detroit and Defendant Detroit Public Works, while Plaintiff is working. Plaintiff was informed that she was only permitted to report work issues to female supervisors. In addition, Plaintiff's assignments would be limited to female partners on whatever truck she was assigned on a particular day by Defendant City of Detroit and Defendant Detroit Public Works.

70. As Plaintiff's job included both operating heavy duty trash pickup trucks and maneuvering large, heavy cans of refuse for residents in the City of Detroit, this limiting assignment of being partnered with another female, was disparate and retaliatory treatment in job assignments.

71. On April 28, 2025, Plaintiff contacted Defendant Human Resources representative, Z.R., and informed Defendant Z.R. that plaintiff has been subjected to negative comments and looks after the meeting on April 24, 2025. On the following day, Plaintiff and Defendant Z.R. met. (**Exhibit 5 – Text from Plaintiff to Defendant Ridley**).

72. After the meeting on April 28, 2025, Defendant Z.R. reaches out to Plaintiff and had her

fill out a sexual harassment form using an E-Link on May 5, 2025. (**Exhibit 6 – Communication from Defendant Ridley to Plaintiff with E-Link**).

73. On April 28, 2025, Plaintiff reached out to Defendant Z.R. and informs her that Plaintiff feels that her work environment has become increasingly hostile and Plaintiff indicated that she no longer felt safe. Plaintiff also notified Defendant Z.R. that she would be filling a PPO against Defendant M.J. and his wife, Simone Jackson in relation to the growing hostility. (**Exhibit 7 – Text from Plaintiff to Defendant Ridley**).

74. On May 2, 2025, Plaintiff informed Defendant Z. R. that she had been permitted to leave early by her supervisor Defendant V.J.-P. Along with this message, Plaintiff informed Defendant Z. R. that the intimidation tactics had worsened and Defendant Detroit Public Works trucks had been continuing to drive by her house at all hours of the day.

75. On May 5, 2025, Defendant M.J. sent a message via text to Plaintiff containing an image of a defamation cease and desist letter.

76. Plaintiff immediately forwarded this message to Defefdant Z.R., but Defendant Z.R. responded by reprimanding Plaintiff for having contact with Defendant M.J., even though Defendant M.J. was the one who initiated the contact. (**Exhibit 8 – Message from Plaintiff to Defendant Ridley**).

77. On May 13, 2025, Plaintiff had a medical emergency in the yard and was transported to DMC Harper Hospital. At the hospital, Plaintiff was evaluated by an OBGYN for vaginal bleeding and pelvic pain. The doctor then confirmed that Plaintiff's pregnancy was in the first trimester.

78. DMC Harper Hospital discharged Plaintiff and sent her home with a note that cleared her to work in three days.

79. On May 20, 2025, Plaintiff was assigned to conduct a work road trip assignment with a co-worker named Kayla who would be driving. Co-worker Kayla did not perform a pre-trip check, as required by Defendant Detroit Public Works' department rules and failed to note that the truck was half empty of gasoline. Kayla also made several unauthorized stops at McDonalds and the Dollar Tree, in the City of Detroit.

80. On May 22, 2025, Plaintiff was directed to meet with Defendant B.L. at 2:30 pm. Defendant B.L., as the Union Representative at Defendant Detroit Public Works work site interrogated Plaintiff about May 20, 2025, workday activities.

81. Defendant B.L. demanded to know why Plaintiff took two lunch breaks, stopped at McDonalds, why Plaintiff failed to fill out the truck log sheet, and whether Plaintiff had stopped to put gas in the truck. This all transpired even though Plaintiff was not the one driving the truck on May 20, 2025.

82. Defendant Doug Collins (D.C.) and Defendant V.P-J. gave a verbal warning regarding attendance to Plaintiff on May 28, 2025.

83. This warning was issued to Plaintiff because of previous days Plaintiff had not been present and had taken off from Defendant City of Detroit and Defendant Detroit Public Works. This post facto inquiry occurred despite Plaintiff having been granted permission by Defendant M.J., her supervisor and harasser, having approved every day that Plaintiff had taken off since being employed by Defendants City of Detroit and Detroit Public Works.

84. Plaintiff was placed on Union probation because of the warning on May 28, 2025.

85. On May 30, 2025, Plaintiff's co-parent to her one of her minor sons, contacted dispatcher Defendant I.W., a City of Detroit and Detroit Public Works employee, to inform Defendants that Plaintiff's son was extremely ill at school and required immediate

pickup/assistance. It took dispatch a half hour to relay this message to Plaintiff.

86. The creation of this hostile work environment prevented Plaintiff from attending to her minor son's medical needs and providing urgently needed care to her son in a speedy manner.

87. On June 6, 2025, Plaintiff had given a time off request for an OBGYN appointment to a senior supervisor. The senior supervisor refused to accept it and told her to wait until Defendant V.P.-J. arrived.

88. Once Defendant V.P.-J. arrived at Detroit Public Works, Plaintiff was sent home and informed that this appointment would be counted against her attendance.

89. Plaintiff then received a phone call from Human Resources indicating that Plaintiff needed to contact the ADA and allow Defendant City of Detroit and Defendant Detroit Public Works permission to speak with her OBGYN to obtain her medical records to permit her to return to work. Plaintiff notes that this unreasonable request is a violation of HIPPA.

90. At the associated OBGYN appointment, Plaintiff received the devastating news that her pregnancy was no longer viable. On this same day, Plaintiff presented at Detroit Medical Center Sinai Grace Hospital to undergo suction, dilation, and curettage in order remove the unviable pregnancy. This procedure and loss of pregnancy led to Plaintiff being deeply traumatized.

91. On June 12, 2025, Plaintiff took a letter to Human Resources, which was signed and accepted by Defendant Z.R., officially requesting a copy of her employee file under the Michigan Bullard-Plawecki Employee Right to Know Act, Public Act 397 of 1978, M.C.L. §423.501. (**Exhibit 9 - Bullard-Plawecki Letter**).

92. Plaintiff, to the date of the filing of this complaint, has not received a copy of her

employment file, despite her official request for same, and did not receive any correspondence from either Defendant City of Detroit or Defendant Detroit Department of Public Works in response to her Bullard-Plawecki letter.

93. Plaintiff filed her official complaint with the EEOC alleging various Title VII Violations on July 8, 2025.

94. On July 21, 2025, Plaintiff had her final probational hearing and regardless of time off having been approved and doctor's notes, Plaintiffs probation period was extended 6 months with Defendants City of Detroit and Detroit Public Works. (**Exhibit 10 – Probation Hearing Memorandum**).

95. Around the date of July 28, 2025, Plaintiff's workplace had grown ever more increasingly hostile towards her.

96. Plaintiff was being followed by members of her department while on duty, she was not allowed to idle her tuck for more than ten minutes, and Defendant, V.P.-J. began trailing her throughout the office.

97. On July 28, 2025, Plaintiff received her Right to Sue letter from the EEOC. (**Exhibit 11 - Right to Sue Letter**).

98. On August 8, 2025, Plaintiff received another write up for leaving work early to meet her eighteen-year-old son who was in the hospital because he couldn't breathe.

99. On August 13, 2025, Plaintiff's sexual harassment claims were finally responded to by Defendant City of Detroit's Civil Rights, Inclusion & Opportunity Department (a.k.a. CRIO). CRIO announced that Defendant M.J.'s actions did not violate the Defendant City of Detroit's zero-tolerance policy of sexual harassment of sexual conduct, despite the blatant display of improper sexual conduct of multiple individuals employed at Defendant

City of Detroit, more specifically Detroit Public Works.

100.   On August 26, 2025, Plaintiff made multiple attempts to contact dispatch to alert supervisors at Defendant Detroit Public Works that Plaintiff was ill and could not make it work this day.

101.   On August 28, 2025, Defendant City of Detroit, Department of Public Works, through its agents and employees, the listed Defendants including but not limited to: Defendant Jackson, Defendant Paris, Defendant Jones-Palm, Defendant Ridley, Defendant Patel, Defendant Wilson, Defendant Collins, Defendant Ligon, Defendant Murphy, Defendant Wilson, Defendant Bozeman and Defendant Looney, constructively discharged Plaintiff by intentionally making working conditions so intolerable and unpleasant with the expectation that Plaintiff would quit. She did. (**Exhibit 12 – Verification of Employment**).

102.   Defendant's resignation under the circumstances constitutes a constructive termination of employment under the circumstances

103.   Even though there are fifteen supervising personnel employed through Defendant City of Detroit and Defendant Detroit Public Works, not even one of them performed their duties to protect Plaintiff from the gross misconduct that she was subject to every workday.

104.   Defendant City of Detroit's CRIO representative, when visiting Detroit Public Works work site in July of 2025 unabashedly declared that reporting issues to the local United States Equal Employment Opportunity Commission (a.k.a. EEOC) only caused "problems" at an employee group meeting.

105.   Everyone charged with following the law and protecting Plaintiff's right to have a harassment free work environment at Defendant City of Detroit and Defendant Detroit Public Works failed to protect plaintiff from the unwanted comments, behavior, harassment

15

and ever-growing hostile work environment created by Defendants.

## COUNT I – VIOLATION OF TITLE VII
## SEX AND RACE DISCRIMINATION/CREATION OF A
## HOSTILE WORK ENVIRONMENT

106.   Plaintiff restates the allegations above word for word and paragraph for paragraph as if fully set forth herein.

107.   Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, condition or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1).

108.   Defendant City of Detroit is an employer covered under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

109.   Defendant Detroit Department of Public Works is an employer covered under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

110.   Plaintiff is an employee as that term is defined by Title VII of the Civil Rights Act of 1964, as amended.

111.   As an indigenous Woman of color, Plaintiff is a member of a protected class.

112.   As described above, Plaintiff was subjected to severe and pervasive sexual harassment by supervisors and co-employees, including Defendant Mark Jackson, Defendant Zachary Paris and the other listed individual Defendants.

113.   As described above, the Detroit Department of Public Works was permeated with discriminatory intimidation, ridicule, and insults that were sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's work environment and create an abusive work environment.

114.   As described above the unwelcome communication and conduct were so severe or

pervasive as to create an environment that a reasonable person would find hostile or abusive and Plaintiff, the victim, subjectively regarded the environment as abusive.

115.    Plaintiff was subjected to unwelcome communication and/or conduct on the basis of sex and/or race.

116.    The unwelcome sexual and/or race-based conduct or communication was intended to, or in fact did, substantially interfere with Plaintiff's job and/or created an intimidating, hostile, or offensive work environment.

117.    There is a basis for holding Defendant City of Detroit liable for the hostile work environment experienced by Plaintiff at the Detroit Department of Public Works.

118.    Defendant City of Detroit's decision-makers at the Department of Public Works, including some of the individual Defendant's listed above, as set forth in the factual allegations of the complaint, including but not limited to Defendants Ligon, Walker, Patel, Murphy, Wilson and Collins, knew about the hostile work environment but failed to document, promptly investigate, ameliorate, corrector or remediate the hostile environment.

119.    Instead, Defendants City of Detroit and Detroit Department of Public Works protected and insulated Defendants Jackson and Paris, who are among the very persons responsible for the creation, nurturance, cultivation and continuation of the hostile environment describe in this Complaint.

120.    Among other things, Defendants Jones-Palm, Ligon, Walker, Patel, Murphy, Wilson and Collins failed to investigate, discipline or correct Defendant Jackson, Paris and others' unlawful conduct which only emboldened Jackson/Paris and others and worsened the abusive toxic working environment at the Detroit Department of Public Works for Plaintiff and other employees.

121.   City of Detroit and Detroit Department of Public Works' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

122.   As a direct and proximate result of Defendants City of Detroit and Detroit Department of Public Works' wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like and non-economic injuries, including but not limited to: mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earning, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

## COUNT II – TITLE VII VIOLATION
## RETALIATION AND CREATION OF A RETALIATORY
## HOSTILE ENVIRONMENT

123.   Plaintiff restates the allegations above word for word and paragraph for paragraph as if they were fully set forth herein.

124.   Plaintiff engaged in protected activity under Title VII when she reported the violations of her civil rights internally and when she reported the violations to the EEOC.

125.   Defendants City of Detroit and Detroit Department of Public Works, through its agents and employees, knew of Plaintiff's protected activity because she and the EEOC told them about it.

126.   Defendants City of Detroit and Detroit Department of Public Works, through its agents and employees, retaliated against Plaintiff when they took adverse employment actions against her because of her protected activity, including, among other things, creating a retaliatory hostile environment, issuing her bogus disciplines, docking her pay, treating her

differently from similarly situated employees, and intentionally engaging in other unlawful conduct which would deter a reasonable person of ordinary firmness from speaking out.

127. A causal connection exists between Plaintiff's protected activity and the adverse employment actions wrongly visited upon Plaintiff.

128. Plaintiff was subjected to severe or pervasive retaliatory harassment by the named listed individual defendants, culminating in her constructive discharge on August 28, 2025.

129. The adverse actions taken by Defendants City of Detroit and Detroit Department of Public Works would deter a person of ordinary firmness from speaking out about the violations of civil rights and other laws at the City of Detroit and Detroit Department of Public Works.

130. As a direct and proximate result of Defendants City of Detroit and Detroit Department of Public Works wrongful acts and omissions, including the constructive discharge of Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like, and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

**COUNT III – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT BASED ON SEX AND RACE AND/OR CREATION OF A HOSTILE WORK ENVIRONMENT BASED ON SEX AND RACE**

131. Plaintiff restates the above allegations word for word and paragraph for paragraph as if they were fully set forth herein.

132. At all material times, Defendants City of Detroit and Detroit Department of Public

Works, as well as Defendants Jackson, Ligon, Patel, Murphy, Ridley and others were employers covered and within the meaning of the Elliott Larsen Civil Rights Act (ELCRA), being M.C.L. §37.2101 et seq.

133. As an indigenous Woman of color, Plaintiff is a member of a protected class.

134. As described above, Plaintiff was subjected to severe and pervasive sexual harassment by supervisors and co-employees, including, but not necessarily limited to the individually listed Defendants.

135. As described above, the City of Detroit and Detroit Department of Public Works were permeated with discriminatory intimidation, ridicule, and insults that were sufficiently severe and pervasive to alter the conditions of Plaintiff's work environment and created an abusive work environment.

136. As described above, the communication and conduct were so severe or pervasive as to create an environment that a reasonable person would find hostile or abusive and Plaintiff, the victim, subjectively regarded the environment as abusive.

137. Plaintiff was subjected to unwelcome communication and/or conduct on the basis of sex and/or race.

138. The unwelcome sexual and/or race-based conduct or communication was intended to or in fact did substantially interfere with Plaintiff's job and/or created an intimidating, hostile, or offensive work environment.

139. There is a basis for holding Defendants City of Detroit and Detroit Department of Public Works liable for the hostile environment at the Department of Public Works, as the Department created, nurtured, encouraged and tolerated the above noted behavior by the listed individual Defendants and supervisory staff at the Detroit Department of Public

Works.

140. Defendant Ridley, who was the Human Resources employee, along with Defendants Jackson, Paris, Patel, Labor Relations representative Bobby Ligon, and the other Defendants who were members of the supervisory staff knew of the hostile work environment described herein but failed to document, promptly investigate, correct, or remediate the hostile work environment.

141. Instead, the listed individual Defendants worked together to empower the unlawful conduct at the Detroit Department of Public Works, protected and insulated Defendants Jackson, Paris and others who were the very persons/entities responsible for the creation and perpetuation of a hostile environment.

142. Among other things, the listed supervisory Defendants failed and refused to investigate, discipline or correct Defendant Jackson's and/or Defendant Paris's unlawful conduct which only emboldened them and worsened the abusive work environment for Plaintiff and other employees at the Detroit Department of Public Works.

143. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

144. Defendant City of Detroit is responsible for the individual Defendants' unlawful conduct under the doctrines of respondeat superior and/or vicarious liability.

145. The listed individual Defendants' discrimination of Plaintiff and/or their creation, nurturance and perpetuation of a hostile work environment based on sex and race is a violation of the ELCRA.

146. As a direct and proximate result of Defendants City of Detroit and Detroit Department of Public Works wrongful acts and omissions, including the constructive discharge of

Plaintiff, Plaintiff suffered economic loss, lost wages, front pay, fringe benefits and the like, and non-economic injuries, including but not limited to, mental anguish, physical and emotional distress, humiliation, mortification, outrage, embarrassment, anxiety, depression, degradation, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

### COUNT IV – RETALIATION IN VIOLATION OF ELCRA AND CREATION OF A RETALIATORY HOSTILE ENVIRONMENT

147.   Plaintiff restates the above allegations word for word and paragraph for paragraph as if fully set forth herein.

148.   Plaintiff's complaints to Defendants City of Detroit and Detroit Department of Public Works as well as to Defendants Ridley, Ligon, Walker, Patel, the EEOC and others about the violation of her civil rights, and those of third-parties, is protected under the ELCRA. *See,* Michigan Compiled Laws §37.2701.

149.   Plaintiff engaged in protected activity under the ELCRA when she reported violations of her civil rights internally and when she reported violations to the EEOC.

150.   Defendants City of Detroit, Detroit Department of Public Works, as well as the listed Defendants and supervisory staff at the Detroit Department of Public Works knew of Plaintiff's protected activity because she and/or the EEOC told them about it.

151.   Defendants City of Detroit and Detroit Department of Public Works, through its agents and employees, retaliated against Plaintiff when they took adverse employment actions against her because of her protected activity, including, among other things, creating a retaliatory hostile environment, issuing her bogus disciplines, docking her pay, treating her differently from similarly situated employees, and intentionally engaging in other unlawful

22

conduct which would deter a reasonable person of ordinary firmness from speaking out.

152. A causal connection exists between Plaintiff's protected activity and the adverse employment actions wrongly visited upon Plaintiff.

153. Plaintiff was subjected to severe or pervasive retaliatory harassment by Defendants City of Detroit, Detroit Department of Public Works, Defendant Jackson, Defendant Paris, Defendant Ridley, Defendant Ligon, Defendant Walker, Defendant Murphy, and other defendants and members of supervisory staff a the City of Detroit and Detroit Department of Public Works.

154. The adverse actions taken by the City of Detroit and Detroit Department of Public Works would deter a person of ordinary firmness from speaking out about the rampant violations of civil rights at the Detroit Department of Public Works.

155. As a direct and proximate result of Defendants City of Detroit and Detroit Department of Public Works, as well as Defendant Jackson, Defendant Paris, Defendant Ridley, Defendant Walker, Defendant Ligon other defendants and members of supervisory staff's wrongful acts and omissions, Plaintiff suffered economic and non-economic loss, mental anguish, physical and emotional distress, humiliation, mortification, embarrassment, anxiety, depression, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

## COUNT V – ASSAULT AND BATTERY – STATE LAW CLAIM - DEFENDANT MARK JACKSON ONLY

156. Plaintiff restates the above allegations word for word and paragraph for paragraph as if fully set forth herein.

157. Defendant Jackson, as noted in the factual allegations above, engaged in unwanted

physical and sexual touching of the Plaintiff on multiple occasions.

158. Defendant Jackson used his position as Plaintiff's supervisor to coerce her into sexual intercourse on multiple occasions over many months.

159. Plaintiff did not want to engage in these encounters, but because of Defendant's supervisory position, felt that she had no choice but to do so.

160. Defendant Jackson would drive to Plaintiff's residence while he was on the clock in his official capacity, and while Plaintiff was not on the clock or working in her official capacity.

161. Defendant Jackson would use an official City of Detroit Department of Public Works vehicle to drive to Plaintiff's residence, and was witnessed on numerous occasions doing so.

162. Defendant Jackson drove to Plaintiff's home, in his official and supervisor capacity, during his work hours, and under that guise, would coerce Plaintiff to engage in sexual intercourse with him.

163. As a result of these encounters, upon information and belief, Defendant Jackson caused Plaintiff to become pregnant with his child, something Plaintiff did not want to occur and which she had tried to avoid during these unwanted sexual encounters.

164. As a direct and proximate result of Defendant Jackson's intentional and unwanted physical contact, Plaintiff suffered economic and non-economic loss, mental anguish, physical and emotional distress, humiliation, mortification, embarrassment, anxiety, depression, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

<u>**COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>**STATE LAW CLAIM – DEFENDANT MARK JACKSON ONLY**</u>

165.    Plaintiff restates the above allegations word for word and paragraph for paragraph as if fully set forth herein.

166.    Defendant Mark Jackson's campaign of sexual coercion over Plaintiff, as set forth in preceding averments, wherein Defendant Jackson used his position as Plaintiff's direct supervisor to do so, is extreme and outrageous conduct which is utterly intolerable in a civilized society.

167.    Defendant Jackson knowingly and intentionally engaged in this conduct, knowing that such behavior was wholly improper and was not desired by Plaintiff.

168.    As a direct and proximate result of Defendant Jackson's improper and violative behavior, Plaintiff suffered economic and non-economic loss, mental anguish, physical and emotional distress, humiliation, mortification, embarrassment, anxiety, depression, fear, loss of the enjoyments of life, loss of earnings, and other damages which will continue throughout and beyond this litigation, as well as the violation of her union protections.

<u>**RELIEF REQUESTED**</u>

**PLAINTIFF REQUESTS** that this Court enter Judgment against Defendants as follows:

A. Legal Relief:

    a.   A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

    b.   Compensatory damages in whatever amount she is found to be entitled;

    c.   Punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; and

    d.   An award of interest, costs and attorney fees as provided in the above referenced

statutes and their counterparts.

B. Equitable Relief

    a.  Grant any other equitable relief which the Court deems just and equitable at the time of trial.

Respectfully Submitted,

DFWN, PLC

/s/ Aimee M. Fowler, Esq.
Aimee M. Fowler, P72736
Daniel J. Williams, P72085
Attorneys for Plaintiff
18050 Mack Ave.
Grosse Pointe, MI 48230
(313) 458-8276 / (313) 469-7085 (FAX)
aimeenfw@gmail.com
danielnfw@gmail.com
richelle@dfwnlaw.com (PARALEGAL)

Dated: October 24, 2025

# Exhibit 1



Kids Mom                                    Edit
9:30:52 PM 53m

369

Dispatch City Of Detroit

Good morning, this is Tela Sabol,
new hire from yesterday, I am
unable to come to work today due
to my 6 year old son not having
supervision today while I'm at
work to and from school. I will be
in tomorrow as soon as I set up
latch key for the mornings and
after school. Please understand I
do not wish to start my
employment off like this during my
probationary period it is imperative
that I find another means of
supervision for my child at this
time.

Good morning this is Tela Sabol, I
can't make it today

I cant make it in today I'm sick will
bring doctors note in

# Exhibit 2



# Exhibit 3

# EXHIBIT HAS BEEN REDACTED PURSUANT TO COURT ORDER

# Exhibit 4



9:44

S

We work together in the same building that he pursued me in. I broke up with him yesterday and sent him back home to you. All I want is my things and I'll give him his things at the job. Don't worry I DEFINITELY DONT WANT HIS ASS, I just borrowed him for a bit and threw him back to you.....the match made in heaven.

Give me a second getting my child together

Ok please call me back cause I would like to talk to you because it must be some miscommunication going on

Phone died

Ok

Thank you for the insight and I wish you the best of luck. My apologies again for my part in this and I hope things work out for you

9:44

S

together

Ok please call me back cause I
would like to talk to you because it
must be some miscommunication
going on

Phone died

Ok

Thank you for the insight and I
wish you the best of luck. My
apologies again for my part in this
and I hope things work out for you
all. Just know that I enjoyed our
talk and I wish it was under
different circumstances but you
are an amazing woman that
deserves so much better..... just
like me. Have a good one

♥

You too love seems of we would
have met under different
circumstances we would have
been friends

# Exhibit 5

Good morning Tela, you can scan and send it to me via email at

Im getting dirty looks Corey was just talking to another employee African/ Jamaican man right next to me and stated he had to go down to HR while staring at me giving nasty looks

Also stating there she go

Also check his work truck gps and see how many times since the day of my employment that it's been at my home. 19748 Rosemont Ave Detroit Mi 48219

Hi Tela, I have turned this case over to our Civil Rights, Inclusion & Opportunity (CRIO) for handling. I will notify supervision of the
incident you mentioned above

# Exhibit 6



3:41                          ．ıı  5G

350                    **M**
                   Mrs. Zena

Hi Tela, I just spoke with the
manager of CRIO, Lesa Kent. She
provided this link for you to file a
formal complaint about the sexual
harassment. Please complete by
tomorrow:

Ok thank you

I don't know the Forman's last
name, only his first name Claude

It's okay, just put what you can

Emergency please call me back

Give me a minute

Just tried calling you

# Exhibit 7

3:41               .ı 5G

350

**M**

Mrs. Zena

I don't feel safe to work in the same environment as Mark I will be filing a ppo and police report on him and his wife.

Can u please see if I can be excused from work tomorrow in order to protect me and my child.

To deal with this matter

Grand rising Mrs. Zena today I was given the okay by Mrs. Val to go home so I could complete the form necessary for CRIO and because I informed her of Mrs. Jackson contacting me to intimidate me on behalf of her husband. I informed Mrs. Val that I needed to make a police report and get a PPO immediately to protect me and my unborn child. I do not feel safe and yesterday after talking with you they continued to drive by my home to intimidate me even more.

# Exhibit 8

May 01, 2025

**VIA Overnight Mail**
   **Social media**

Tela Blount Sabol



### RE: Cease and Desist – Defamation

To Whom It May Concern:

It has come to my attention that you have made a defamatory and false statement about me. The following false statement(s) was made: Telling everyone you are pregnant by me. . For examples, refer to Exhibit A to this letter. The statement(s) was Telling coworkers your friends and family, and my wife. , and is willfully misleading and without merit because I have had a catherized vasectomy .

The false statement(s) that you made is reckless and highly defamatory, and has caused me to suffer:
- Reputational harm
- Harm to my/our character and reputation
- My marriage is affected by her false claims

In addition, the false statement(s) has affected me in the following ways: Reputation at work is affected and also my marriage. .

I hereby demand that you: Immediately cease and desist from making any and all false statements against me within 1 days of the date of this letter, remove all defamatory statements and contents from From texts and social media and publish a retraction, and notify me in writing when these tasks have been completed.

If you do not cease and desist within the above stated time period, I will be forced to take appropriate legal action against you and will seek all available damages and remedies.

                                Sincerely,

                                                    1 / 3

9/11/25, 4:55 PM                                    Screenshot 2025-09-11 at 4.44.20 PM.JPEG





3:41    5G

350

M

Mrs. Zeno

Good morning Tela, I will let CRIO
know. Take care.

Still being contacted and harassed
by Mark Jackson



3:42      5G

350

M

Mrs. Zena

Not official and I'm no lice and a able if you have at all, asking to stop harassing me. Stop the ridiculating tactics.

Still being contacted and harassed by Mark Jackson.

From different numbers. This was just this morning

Hi Tela, I sent this over to CRIO

Mrs. Zena I have not contacted that man once nor his wife besides last Thursday when she contacted me and I returned the unknown number. I believe that it time for phones to be turned over to the police department for full IT discovery. My child has been Threatened/ children, home and work. I have been discriminated against along with improper protocol of procedures in the beginning and I fear for my safety.



3:42                              5G

350                    M

Mrs. Zena

Mrs. Zena I have not contacted
that man once nor his wife besides
last Thursday when she contacted
me and I returned the unknown
number. I believe that it time for
phones to be turned over to the
police department for full IT
discovery. My child has been
Threatened/ children, home and
work. I have been discriminated
against along with improper
protocol of procedures in the
beginning and I fear for my safety.
I am willing to turn over my phone
tomorrow immediately so the truth
can be found and KNOWN.

3:42

5G

M

Mrs. Zena

tomorrow immediately so the truth can be found and KNOWN.

3:59

.ıl 5G

< 🗓 🗑 ✉ ⋯

Follow Up ☐ inbox ⭐

Z  Zena Ridley May 5     ☺ ↩ ⋯
   to me, Rosita ⌄

Good afternoon Tela,

I wanted to follow up with you and let you know I received your text this morning regarding the text you received from Mark Jackson about the "cease and desist" letter. Per our original conversation, on 04/24/2025, you were advised not to have any contact with Mark Jackson during work. The DPW/Solid Waste Division has notified HR that you no longer report to him indirectly or directly. Mark Jackson was also told not to have any contact with you while at work.

Please note that the City of Detroit takes all reports of sexual harassment/harassment seriously. Once you reported the sexual harassment claims to HR on 04/24/2025, a formal investigation began and is currently on-going through our Civil Rights & Inclusion Opportunity (CRIO) department. We will continue to keep you posted on the progress of the investigation and encourage you to report any other instances and/or forms of harassment.

↩ Reply          ↪ Forward          ☺



3:59     .ıl 5G

Please note that the City of Detroit takes all reports of sexual harassment/harassment seriously. Once you reported the sexual harassment claims to HR on 04/24/2025, a formal investigation began and is currently on-going through our Civil Rights & Inclusion Opportunity (CRIO) department. We will continue to keep you posted on the progress of the investigation and encourage you to report any other instances and/or forms of harassment.

Please contact me with any questions or concerns you may have.

Thank you,

Zena A. Ridley, PHR

Employee Services Consultant III

City of Detroit, Human Resources Department

↰ Reply     ↱ Forward

# Exhibit 9

June 12, 2025

City of Detroit
Department of Public Works
Coleman A. Young Municipal Center
2 Woodward Ave., Ste. 611
Detroit, MI 48226

Attention: Human Resources Department

I am sending this request to review and make copies of my employment/personnel file pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 et seq. Please feel free to send me a complete copy of my file in lieu of review. My address appears below my signature. If you want me to come in personally to review the file and identify all portions I want copies of, please contact me at (313) 464-9633 or by email at telablount@gmail.com.

Sincerely,

**Ms. Tela Sabol**

19748 Rosemont Ave.
Detroit, MI 48219

I acknowledge on behalf of Human Resources for the Department of Public Works that I have received this letter from Ms. Tela Sabol on June 12, 2025.

o/b/o Department of Public Works, HR

Print Name: _Zena A. Ridley_
_Employee Services Consultant_

# Exhibit 10

1:35

SKM_C361i25072510220



## Final Probation Review, NON-TEO Employees - Jul 2025

### Tela M. Sabol, Refuse Collection Packer
**Effective date** 07/26/2025

### Review Summary

#### Contributors
- Valerie J. Jones-Palm, Manager - Due: 07/21/2025
- Administrator
- Tela M. Sabol, Employee

#### Instructions
&lt;p&gt;The Final Probation is used to document an employee&amp;rsquo;s performance evaluation around the end of the probation period (approx. 6 months), as an aid in providing feedback to the employee of their permanent placement in the new position.&lt;/p&gt;

#### Ratings

|  | Manager Rating |
|---|---|
| Competencies | U - Unsatisfactory: |
| Overall Rating | U - Unsatisfactory: |

#### Final Score

**Score:**

#### Signatures and Final Comments

| | |
|---|---|
| **Tela M. Sabol**, Employee | No comments are available. |
| **Valerie J. Jones-Palm**, Manager | No comments are available. |

## Competencies

### Instructions

1:36

SKM_C361i25072510220

## Competencies

### Instructions

<p>The following explanation of competencies is provided. U -Unsatisfactory: Consistently below acceptable levels of performance. N &ndash; Needs Improvement: Inconsistent performance: does not always meet expected levels of performance. M &ndash; Meets Expectations: Consistently meets and in some instances, exceeds expected levels of performance. Explain all unsatisfactory ratings. Be specific.</p>

### Section Ratings

**Manager Rating**

U - Unsatisfactory:

### Rating Scale

| Title | Description |
|---|---|
| **U - Unsatisfactory:** | Consistently below acceptable levels of performance. |
| **N - Needs Improvement:** | Inconsistent performance: does not always meet expected levels of performance. |
| **M - Meets Expectations:** | Consistently meets expected levels of performance. |

## Competency Ratings Competency Comments

1. **COD - EMPLOYEE: Accountability**
Takes responsibility for personal behavior and is proactive. Strive to be in attendance, punctual, and fully present. Seeks developmental opportunities to learn, grow and improve. Works to simplify processes, enhance services and promote accessibility for all. Delivers quality and timely service.

| Type | City of Detroit: Employee Level |
|---|---|
| **Tela M. Sabol** , Employee | No comments are available. |
| **Valerie J. Jones-Palm** , Manager | No comments are available. |
| **N - Needs Improvement:** | |

2. **COD - EMPLOYEE: Collaboration**
Works together working within our respective teams and city departments. Recognizes the value of working and succeeding with others. Encourages, seeks, and values input from others.

| Type | City of Detroit: Employee Level |
|---|---|
| **Tela M. Sabol** , Employee | No comments are available. |
| **Valerie J. Jones-Palm** , Manager | No comments are available. |
| **N - Needs Improvement:** | |

1:36

SKM_C361i25072510220

### 3. COD - EMPLOYEE: Customer-Centered
Anticipates and meets the needs of both internal and external customers. Goes the extra mile when providin services. Delivers high-quality products and services. Provides excellent customer experiences and is committed to continuous improvement.

| Type | City of Detroit: Employee Level |
|---|---|
| Tela M. Sabol , Employee | No comments are available. |
| Valerie J. Jones-Palm , Manager N - Needs Improvement: | No comments are available. |

### 4. COD - EMPLOYEE: Integrity and Ethics
Works to build trust and transparency. Contributes to maintaining the integrity of the organization; displays high standards of ethical conduct and understands the impact of violating these standards on the organizatic oneself, and others. Promotes public confidence. Operates with integrity and adheres to the Ethics Ordinanc

| Type | City of Detroit: Employee Level |
|---|---|
| Tela M. Sabol , Employee | No comments are available. |
| Valerie J. Jones-Palm , Manager N - Needs Improvement: | No comments are available. |

### 5. COD - EMPLOYEE: Professionalism and Credibility
Displays responsible behaviors at work. Demonstrates self-control, maintains a professional appearance, maintains a positive attitude. Adheres to work rules and workplace policies.

| Type | City of Detroit: Employee Level |
|---|---|
| Tela M. Sabol , Employee | No comments are available. |
| Valerie J. Jones-Palm , Manager N - Needs Improvement: | No comments are available. |

### 6. COD - EMPLOYEE: Workplace Safety and Security
Follows and adheres to all safety rules. Reports potentially hazardous situations and unsafe working conditions immediately. Promotes a harassment-free environment. Adheres to all related policies.

| Type | City of Detroit: Employee Level |
|---|---|
| Tela M. Sabol , Employee | No comments are available. |
| Valerie J. Jones-Palm , Manager N - Needs Improvement: | No comments are available. |

1:36

SKM_C361i25072510220

7. xCOD - PROBATIONARY: Attendance and Tardiness
Reliable Attendance and Tardiness during probation period. Total time taken and on-time arrival ensure job performance and work assignment requirements are met. Provide specific details if rating is Unsatisfactory. Total Days Absent: Paid S/L, Abs./No Pay, AWOL. Total times Tardy:

| | |
|---|---|
| **Type** | City of Detroit Probationary Employee Level |
| **Tela M. Sabol** , Employee | No comments are available. |
| **Valerie J. Jones-Palm** , Manager | Total Absent Days: 42, Paid S/L: 0, Abs/No Pay: 28, AWOL: 15 |
| **U - Unsatisfactory:** | |

## Departmental and Probation Recommendations

### Instructions

&lt;p&gt;The Final Probation form is used to evaluate an employee&amp;apos;s performance at the conclusion of their initial probationary period (approximately six months). This evaluation helps provide feedback for determining whether the employee should be granted permanent (certified) status. If, based on your assessment the employee requires an extended probationary period or termination from the position, please contact your Employee Services (ES) consultant for further guidance. **NOTE: Failure by the Department to submit a timely probation report will result in the employee gaining permanent status by default.&lt;/p&gt;

### Questions and comments

1. Provide details to document your recommendation for employee's Permanent Status.

| | |
|---|---|
| **Tela M Sabol** , Employee | *No comments are available.* |
| **Valerie J Jones-Palm** Manager | Probationary employee Tela Sabol has 42 days of absent, although the employee provided doctor's notes for some of these days it is still in violation of the departmental policy for Acceptable Attendance. The department is not able to make an assessment of work ability at this time. Probation for this employee is being extended for an additional six (6) months. |

## Overall Evaluation Comments

### Instructions

&lt;p&gt;Concur with Departmental Recommendation (Yes/No) Automatic Affirmation: Received too late (default) Entered into HRIS Date:&lt;/p&gt;



**Comments**

**Valerie J Jones-Palm** , Manager    Extension of Probation for an additional six (6) months.

# Exhibit 11



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/28/2025

**To:** Ms. Tela M. Sabol

████████

Charge No: 471-2025-04943

EEOC Representative and email:     LARRY COOPER
INVESTIGATOR
LARRY.COOPER@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 471-2025-04943

On behalf of the Commission,

Digitally Signed By:Ramiro Gutierrez
07/28/2025
Ramiro Gutierrez
Director

**Cc:**
City Of Detroit DPW
5800 RUSSELL ST
DETROIT, MI 48211

Erica Hill
█████████████

**Please retain this Notice for your records.**

# Exhibit 12



**Human Resources**
POLICY, PLANNING AND OPERATIONS

CITY OF
**DETROIT**

Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 316
Detroit, Michigan 48226

Phone 313·628·2437
Fax 313·224·5609
www.detroitmi.gov

DATE:      September 11, 2025

TO:         To Whom It May Concern

RE:         Verification of Employment with the City of Detroit

The person named listed below is no longer employed with the City of Detroit Department of Public Works.

Please see status below:

Name:       Tela Sabol

SS#:

Job Title:   Refuse Collection Packer

Salary:     $42,738.00

Employment: January 27, 2025   - August 28, 2025

Sincerely,

*Donetta Sanders*

**Donetta Sanders**
HR Assistant III
Human Resources Department
Policy, Planning & Operations